## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: April 08, 2020

Ms. Jessica Lynn Asbridge
Ms. Sarah P. Wimberly
Ford & Harrison
271 17th Street, N.W., Suite 1900
Atlanta, GA 30363

Ms. Carolyn M. Homer
Latham & Watkins
555 Eleventh Street, N.W.
Suite 1000
Washington, DC 20004

Ms. Lena F Masri
Mr. Justin Mark Sadowsky
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, DC 20003

Re: Case No. 19-1034, *Charee Stanley v. ExpressJet Airlines, Inc.*
Originating Case No. : 2:16-cv-12884

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0201n.06

No. 19-1034

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 08, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CHAREE STANLEY,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>EXPRESSJET AIRLINES, INC.,<br><br>    Defendant-Appellee. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: BOGGS, BATCHELDER, and DONALD, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Recognizing the critical role the transportation sector serves in the country's security and prosperity, Congress amended the Railway Labor Act ("RLA") in 1934 to require that all minor labor disputes in these vital industries be resolved by arbitration. *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 558 U.S. 67, 72-73 (2009). Rather than having every issue that would invariably arise in the workplace litigated through the court system, Congress instead sought to facilitate the "peaceful and efficient resolution" of employees' grievances through arbitration whenever the governing collective bargaining agreement ("CBA") addressed those issues, including pay or working conditions. *Id.* at 72; 45 U.S.C. § 151 *et seq.* As the Supreme Court and this circuit have repeatedly held, when a claim can be resolved conclusively by the CBA, the claim is preempted[1] and must be brought before an arbitrator, not a court.

---

[1] Federal claims are said to be "precluded," while state claims are said to be "preempted." For the purposes of the RLA, this is a distinction without a difference, as the same standard applies for both preclusion and preemption, i.e., whether the claim could be conclusively resolved by the CBA. *See e.g. Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 662 (7th Cir. 2001) ("[W]e find the preemption question sufficiently similar to the preclusion question to make

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994); *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 792 (6th Cir. 2012).

In the case before us, Charee Stanley, a practicing Muslim and formerly employed flight attendant at Defendant ExpressJet Airlines, Inc. ("ExpressJet"), brought a federal religious discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and a state religious discrimination claim under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.* ("ELCRA"), as well as a retaliation claim. Stanley requested and was denied an accommodation that would excuse her from her duties of preparing and serving alcohol during flights, which Stanley says her religion forbids. The question we must answer, however, is not whether Stanley's claims have any merit, but whether we may hear her claims in the first place. If Stanley's claims can be conclusively resolved by the CBA, then they are preempted by the RLA. The district court granted ExpressJet's motion for summary judgment, holding that Stanley's religious-discrimination claims were preempted under the RLA and that she failed to create a genuine issue of material fact for her retaliation claim, which also would have been preempted. For the reasons below, we AFFIRM the district court as to all claims.[2]

---

the analysis employed in the RLA preemption cases applicable here."); *Parker v. American Airlines, Inc.*, 516 F. Supp. 2d 632, 637-38 (N.D. Tex. 2007) ("Arbitral boards established under the RLA enjoy exclusive jurisdiction to resolve all disputes requiring the construction or application of a CBA regardless of whether the dispute involves a state-law claim or a federal claim. When applied to a state-law claim, the RLA is said to preempt. But when applied to a federal claim, the RLA is said to preclude.") (citation omitted); *VanSlyck v. GoJet Airlines, LLC*, 323 F.R.D. 266, 269 (N.D. Ill. 2018) ("It is well settled that the RLA requires mandatory arbitration of so-called 'minor disputes,' which are those requiring 'interpretation or application' of a CBA. Such disputes are thus 'preempted' (if raised in a state claim) or 'precluded' (if raised in a federal claim)."(citation omitted)). While recognizing the difference between preclusion and preemption, we will refer to both Stanley's federal and state claims as "preempted" for the sake of brevity and clarity.
[2] On June 7, 2019, ExpressJet filed a motion for leave to file a sur-reply. The motion was referred to the merits panel for consideration along with the briefs as filed. Because new arguments first raised in a reply brief are generally not considered and given the final disposition of this case, we DENY ExpressJet's motion. *See United States v. Jenkins*, 871 F.2d 598, 602, n. 3 (6th Cir. 1989) ("[C]ourt decisions have made it clear that the appellant cannot raise new issues in a reply brief.").

I.

In January 2013, just a few weeks after converting to Islam, Charee Stanley began working for ExpressJet as a flight attendant. As part of her duty as a flight attendant, Stanley was required to prepare and serve alcoholic drinks to passengers. From January 2013 through June 2015, Stanley prepared and served alcohol to passengers and was by all accounts a professional and attentive flight attendant. However, in June 2015, Stanley had a conversation with her imam who informed her that not only were Muslims forbidden from consuming alcohol, but also from preparing or serving it. Upon being advised of this, Stanley spoke to Inflight Operations Manager Melanie Brown the following day. Because Stanley's next assigned flight was "within minutes" of departing, Brown suggested Stanley ask the other flight attendant to handle all of the alcoholic beverages prepared and served during the flight. At this point, the parties' accounts diverge. Stanley claimed she understood this would be a permanent solution going forward, while Brown thought this was a temporary accommodation for "that specific flight" because Stanley "was beginning to observe Ramadan."

Regardless, this arrangement was unlikely to succeed in the long-term as it violated several provisions of the CBA. As an ExpressJet flight attendant, Stanley was a member of the International Association of Machinists and Aerospace Workers ("the Union"). The CBA was negotiated between the Union and ExpressJet and governed Stanley's relationship with ExpressJet as her employer.

There are three provisions of the CBA pertinent to this dispute. First, flight schedules, as well as bidding rights, filling of vacancies, vacation preferences, and domicile assignments, are all based on a flight attendant's seniority. Second, on a flight with two flight attendants, "[t]he senior Flight Attendant may choose the 'A' or the 'B' position on the aircraft." Flight Attendant A is

primarily responsible for the First Class passengers, while Flight Attendant B is primarily responsible for the main cabin. The Flight Attendant Handbook ("FAM") specifies in more precise detail the actual duties of each flight attendant. For example, Flight Attendant B (usually the junior flight attendant) is expected to "prepare beverages" and assist Flight Attendant A with preparing and serving beverages to the First Class cabin, "including alcoholic beverages." Third, if a scheduled flight with two flight attendants is downgraded to a flight with only one flight attendant, the senior flight attendant has the right to accept or decline the downgrade. If the senior flight attendant declines the downgrade, the junior flight attendant must accept the assignment.

Stanley's requested accommodation of having the other flight attendant (who likely would have seniority given Stanley's relatively short tenure at ExpressJet) serve all of the alcoholic beverages on a flight conflicts with the CBA's seniority provisions in at least four ways. First, requiring the senior flight attendant to serve alcoholic drinks for both the First Class cabin and the main cabin violates the CBA provision that permits the senior flight attendant to choose whether he or she would prefer position A or position B. While the flight attendants are expected to help one another, it would violate the CBA if ExpressJet were to mandate that the senior flight attendant accept the alcoholic beverage service duties for both positions. Second, under Stanley's requested accommodation, she could refuse a senior flight attendant's request for assistance with the alcoholic beverage service to the First Class cabin. Both flight attendants are expected to help one another, and the FAM specifically mentions that "[Flight Attendant] B should assist with preparing" alcoholic beverages for first class passengers "while [Flight Attendant] A delivers."

Third, if a flight with two flight attendants is downgraded to a flight with one flight attendant and the senior flight attendant declined the assignment (as is his or her right under the CBA), Stanley, as the junior flight attendant on that flight, would be required to accept the

-4-

assignment. However, if Stanley's requested accommodation were granted, she could not accept the assignment as there would be no one on the aircraft who could serve alcoholic beverages to passengers were she the only flight attendant. If no reserve flight attendants were available, ExpressJet would be forced to require the senior flight attendant to serve as the single flight attendant, despite the senior flight attendant's initially declining the assignment, thus clearly violating the CBA. Fourth and finally, this reality would mean in effect that Stanley could never be assigned to a single-flight-attendant flight. However, the preference of flights is determined by seniority and Stanley's religious accommodation and corresponding mandatory flight preference would put her preferences ahead of those of flight attendants with greater seniority in violation of the CBA. The Union agrees that Stanley's requested accommodation violates the CBA's seniority provisions.

Less than a week after Stanley's initial meeting with Brown, ExpressJet received its first complaint from one of Stanley's coworkers, who complained about having to serve all of the alcoholic drinks on a flight. Just a week later, Stanley took time off without pay for the month of Ramadan, which delayed any conflicts at least temporarily. Upon returning later that summer, Stanley again began asking the other flight attendant to prepare and serve all alcoholic drinks on each flight she worked. On August 2nd, just two weeks after Stanley returned to work, ExpressJet received a complaint from another flight attendant who expressed frustration with having to do "both [flight attendant] A and [flight attendant] B duties."

On August 18, 2015, Stanley met with Brown, a Union representative, and an ExpressJet human resources representative to discuss Stanley's situation. Stanley was presented with three options: (1) take personal leave and seek another position at the airline, (2) agree to serve and sell alcohol, or (3) voluntarily resign. Before Stanley decided, ExpressJet placed her on 90-day non-

disciplinary, unpaid administrative leave, which was soon extended to a year. Stanley rejected the options ExpressJet presented and instead submitted a formal request for her preferred accommodation.

ExpressJet rejected Stanley's request on August 25th. Stanley did not apply for another position at the airline during her leave and filed suit in federal court a year later in August of 2016. ExpressJet's motion to dismiss was denied, but after discovery, ExpressJet filed a motion for summary judgment that the district court granted. The district court found that Stanley's religious discrimination claims were preempted, and that she had failed to make a retaliation claim, which also would have been preempted if made successfully. Stanley now appeals.

II.

"This court reviews the district court's grant of summary judgment de novo." *CSX Transp., Inc. v. United Transp. Union*, 395 F.3d 365, 368 (6th Cir. 2005). "Summary judgment is appropriate where there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Emswiler*, 691 F.3d at 788 (citing Fed. R. Civ. P. 56(a)).

Before we may address whether Stanley has a viable Title VII claim or its counterpart state-law claim, we must first decide whether we can reach the merits of either claim. The RLA, which was extended to cover airlines in 1936, requires minor disputes to be resolved by arbitration. *Hawaiian Airlines,* 512 U.S. at 248. If an issue qualifies as a minor dispute, then an Article III court cannot reach the merits of the dispute, but rather can only enforce the arbitrator's decision. *See Dotson v. Norfolk Southern R.R. Co.,* 52 F. App'x 655, 658 (6th Cir. 2002). In this case, Stanley did not pursue arbitration, but rather went directly to federal court. The question before us is whether this issue is preempted by the RLA and therefore must be decided by an arbitrator.

No. 19-1034, *Stanley v. ExpressJet*

For a claim to be preempted, the CBA must conclusively resolve the dispute. *Emswiler*, 691 F.3d at 792. An employer cannot take an otherwise valid claim and cause it to become preempted by claiming the CBA as a defense. *Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001). ExpressJet claims that Stanley's requested accommodation would require it to violate the CBA and an accommodation that violates the CBA would constitute an undue hardship. Stanley argues that her *prima facie* Title VII claim does not require interpretation of the CBA and the CBA is only implicated, if at all, by ExpressJet's raising it as a defense. However, Stanley misstates the extent to which her initial claim implicates the CBA and misunderstands what constitutes a preempted claim under Sixth Circuit precedent.

In this circuit, we employ a two-step test to determine whether a CBA preempts a claim: "First, the [] court must examine whether proof of the [] claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state [or federal] law." *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). If the right is created by the CBA *or* if the interpretation of the CBA is necessary to determine the proof of the claim, then the claim is preempted. *Id.*

In this case we must answer three questions: (1) Does a Title VII claim require a court to assess whether there is undue hardship? (2) Would violating the seniority provisions of the CBA constitute undue hardship? (3) Would examining the CBA conclusively resolve the question of undue hardship and therefore the merits of Stanley's Title VII claim? We answer "yes" to each question and hold that because the CBA can conclusively resolve Stanley's religious-discrimination claims, her claims are preempted under the RLA.

-7-

A.

Title VII requires a plaintiff first to establish a *prima facie* case. *Virts v. Consolidated Freightways Corp. of Delaware*, 285 F.3d 508, 516 (6th Cir. 2002). There are three elements the plaintiff must show: (1) that the employee holds a sincere religious belief that conflicts with an employment requirement, (2) that the employee informed the employer about the conflict, and (3) that the employee was discharged or disciplined for failing to comply with the requirement. *Id.* Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant. *Id.* In order to escape liability, the employer must show that the accommodation would create an "undue hardship." *Id.* "To require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship." *Id.* (quoting *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994)). Given that the statutory text of Title VII clearly provides for an exception for accommodations that would be an "undue hardship" for the employer, a court presented with a Title VII claim must always examine whether the requested accommodation presents an undue hardship. 42 U.S.C. § 2000e(j). Contrary to Stanley's claims, undue hardship is not a defense raised to excuse a Title VII violation; rather, undue hardship is a part of the Title VII analysis, and a Title VII claim cannot be decided unless a court determines whether the accommodation would in fact impose an undue hardship.

B.

For the purposes of its summary judgment motion, ExpressJet concedes that Stanley has met the *prima facie* requirement. It argues that Stanley's accommodation would force it to violate the CBA and that constitutes an undue hardship. As we have previously held, a Title VII accommodation that would force the employer to violate the seniority provisions of the CBA constitutes an undue hardship. *Virts*, 285 F.3d at 517-18. It cannot be the case that the law would

No. 19-1034, *Stanley v. ExpressJet*

put the employer in an impossible situation where it either faces liability for refusing a religious accommodation (and respecting the CBA's seniority provisions) or faces liability for violating the CBA if it grants the accommodation. This court has reconciled this conflict by holding that when the accommodation would violate the CBA's seniority provisions, the accommodation constitutes an undue hardship and the employer may refuse to grant it. *Id*.

C.

The third and most important question is not whether the accommodation would be an undue hardship, but whether the CBA can conclusively resolve Stanley's Title VII claim. Any court seeking to address Stanley's religious-discrimination claims must interpret the CBA. Because a court hearing a Title VII claim must assess undue hardship and because an accommodation that violates a CBA's seniority provisions constitutes undue hardship, we would need to interpret the CBA to resolve Stanley's Title VII claim on the merits. For instance, we would need to determine whether permitting Stanley to refuse a downgraded flight with a single flight attendant violates the seniority provisions of the CBA. Or whether forcing a senior flight attendant to serve on a downgraded flight or requiring a flight attendant to accept the alcoholic beverage service duties of both positions violate those provisions. The answer to these questions lies in the CBA and only the CBA can resolve them conclusively. Regardless of the outcome, the CBA resolves the issue; therefore, under the RLA, Stanley's claims are preempted.

III.

Stanley also brought a retaliation claim against ExpressJet. In order "to prevail on a claim for retaliatory discharge under Title VII, a plaintiff must first establish a *prima facie* case by demonstrating that 1) the plaintiff engaged in an activity protected by Title VII; 2) the exercise of the plaintiff's civil rights was known to the defendant; 3) the defendant thereafter undertook an

-9-

employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action." *Virts*, 285 F.3d at 521. Once the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant who must "articulate a legitimate, nondiscriminatory reason for its actions." *Id.* If the defendant can provide a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff, who must "demonstrate that the proffered reason was a mere pretext for discrimination." *Id.* A plaintiff can successfully demonstrate that the defendant's reason was a mere pretext by showing that: "1) the stated reason had no basis in fact; 2) the stated reason was not the actual reason; or 3) the stated reason was insufficient to explain the defendant's actions." *Id.* In other words, a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *Id*. (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original)).

The district court held that Stanley failed to create a genuine issue of material fact as to the first element of her *prima facie* case, i.e., that she engaged in an activity protected by Title VII, because Stanley never identified what exactly was her "protected activity." In both her corrected brief and reply brief on appeal, Stanley still fails to identify what protected activity she engaged in for which ExpressJet allegedly retaliated against her. Under Title VII, protected activity "can fall into two categories: participation and opposition." *Perkins v. International Paper Company*, 936 F.3d 196, 213 (4th Cir. 2019). More specifically, protected activity means the employee either (1) opposed an employer's discriminatory activity or practice made unlawful by Title VII, or (2) testified, assisted, or participated in an investigation or proceeding under Title VII. 42 U.S.C. § 2000(e)-3(a); *see* 45A Am. J. 2d Job Discrimination § 244. Regardless of which category the protected activity falls under, for a retaliation claim, "the key question is whether the complaint

concerns conduct between an employer and its employee." David C. Singer and Joshua Colangelo-Bryan, *Protected Activity Under Title VII Retaliation Claims*, 231 N.Y. L. J. 2 (Feb. 6, 2004).

Even when we construe the facts in Stanley's favor, we are at a loss to discern what Stanley's protected activity could be. It cannot be the case that Stanley was terminated or put on leave because of her participation in an investigation as Stanley did not participate in any investigation, nor was ExpressJet the subject of any investigation or proceeding under Title VII before Stanley's termination. It also cannot be the case that Stanley faced retaliation for calling attention to an allegedly discriminatory activity by ExpressJet. Nothing in Stanley's allegations accuses ExpressJet of any discriminatory activity. Stanley's only accusation of animus was against a fellow flight attendant who questioned Stanley's choice to read "foreign writings," while the other flight attendant was forced to prepare and serve all alcoholic drinks to both cabins. Notwithstanding the fact that there were likely non-discriminatory reasons for the flight attendant's complaint, the accusation is irrelevant to a retaliation claim because the alleged behavior was not that of the employer, but rather of another employee. Nowhere in Stanley's recounting of the facts does she mention discriminatory behavior by ExpressJet, Stanley's opposing discriminatory behavior of ExpressJet, or Stanley's then facing retaliation for opposing any alleged discriminatory behavior of ExpressJet.

ExpressJet suggested that perhaps Stanley meant that her request for an accommodation constituted protected activity. A request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation. 42 U.S.C. § 2000e-3(a). On appeal, Stanley has again failed to identify a protected activity she engaged in, and it is not the responsibility of this court to fill in

the blanks for her. Because Stanley failed to establish the first element of a retaliatory discharge claim, she cannot establish a *prima facie* case and, consequently, her retaliation claim fails.

The district court was thorough in analyzing why each of Stanley's arguments related to her retaliation claim lacked either a legal or factual basis. The district court concluded that Stanley's novel "retaliation by ratification" legal theory[3] was not backed by any case law, that discovery did not reveal any factual support for Stanley's claims of alleged animus toward her faith (and if anything, there was actually evidence to the contrary, such as ExpressJet's approving her request to wear a hijab), and that her retaliation claim, even if correctly made, would also be preempted under the RLA. However, because Stanley's failure to create a genuine issue of material fact as to whether she had engaged in protected activity is dispositive, we do not need to consider those other arguments on appeal.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court on all counts.

---

[3] Stanley appears to have argued that ExpressJet ratified her coworker's comments about Stanley's reading "books with foreign writings" and about Stanley's hijab by reacting to the complaint that contained them, that these comments constituted animus, and that the supposed ratification constituted retaliation.

-12-